Good morning, Your Honors. I'm Adam Wechstein, and I represent the Plaintiffs' Appellants. May it please the Court, the issue in this case is whether the practices of the City of Syracuse under their Rental Registry Ordinance violate the Fourth Amendment and Article 1, Section 12 of the New York State Constitution. In Syracuse, under the Rental Registry, to rent a non-owner-occupied one-family or two-family dwelling, you need to obtain an interior search from the City. That can happen two ways. On consent of the landlord... Can you start, actually, and I don't mean to interrupt you, but we've got a bunch of things, I think, to cover here. What exactly do you think the Fourth Amendment interest is in this property? I think the Fourth Amendment interest, number one, is as the New York Court of Appeals said in Sokolov, an interest in self-protection of the landlords. Number two... Does that distinction turn on whether it's owner-occupied or not? I'm sorry, whether or not it's occupied or not occupied? I don't think so. I think it can... Explain how is it the self-protection of the landlord? Well, the landlord is prevented from utilizing the property for any kind of income-productive measure. It is subject to criminal penalties, although counsel would say... But not those here, though, right? They're not subject to criminal penalties here, right? They just don't get their license to rent. Is that correct? No, they are... Well, there would be a dispute as to whether they're criminal, but under the code, under the heading criminal penalties, it imposes a fine and up to 15 days' imprisonment with each day counting as a separate violation. For what? But that's for... For not obtaining the rental registry certificate and rent. Well, for renting the property without a rental registry certificate. Correct. Correct, Your Honor. So your client is not being penalized for declining consent? It is not, although if we look at the case laws such as Succola and some of the other cases in New York, they have, which admittedly are in federal cases, they've rejected that distinction and they basically said that if you're doing it indirectly by preventing someone, by penalizing someone for failing to consent, and as a result, penalizing them by not allowing to rent their unit, you have in fact done, again, you've violated the Fourth Amendment rights. So one of the things that I found troubling, and I'm hoping you can help me with this, is the cases that I thought were really important weren't in your briefs. And granted, some of them came down after some of the briefing had been done, but I was hoping you could explain to me how Wyman, how Hudson Shores, and how Hirschfuss analysis should inform how we're thinking about this case. I am not familiar with those cases. I apologize to the Court. Okay. Okay. Well, how about the Sixth Circuit's opinion on Hirschfuss, which appears to me to have a particular salience here, in addition to the cases identified by my colleague? Well, Hirschfuss, I believe, was concerned if I recall, well, I think the Court should distinguish that. I do think it is relevant. It is similar to this case, for sure. But I would suggest that the Court should not go along with that precedent. Okay. But then how do we deal with, because Hirschfuss was premised on Wyman, which was, like, the idea that it is a public benefit, as opposed, or it is a benefit being conferred by the government, as opposed to a criminal penalty. How should we think about that analysis in this matter? I'm not sure how that can be a benefit, to allow someone to use their home property. And I think in other contexts, such as takings, and, for example, in New York, under things like impact fees and unconditional conditions, documents federal, documents federally. So we should understand the Fourth Amendment as protecting other constitutional property rights? Is that how you ask us to do this? No. No. I'm not saying that. But I'm saying, as an analogue, I don't know how the government, by letting you use your own property, is conferring a benefit on you. It's something that's inherent in your ownership of the property. Admittedly, the government has a right and duty to regulate it to maintain public safety. Well, I mean, the case, Hirschfuss said that the search provision there passed muster because it was based on the fact that it most imposed a limited search by a specific city official for the specific purpose of receiving a benefit citing to Wyman. And it was to ensure the well-being of the tenants. It's a regulation of the commercial property. These are not your clients' private homes. They are not my clients' private homes. It has to be non-owner-occupied. But this is also not a challenge to the face of this ordinance. We are not claiming that an which has the alternatives, the either-or, either consent or warrant, is unconstitutional. We're claiming that in a situation where the city, for a period of six years of applications, in every instance when someone declined consent to allow an inspection, effectively sat on its hands. It didn't seek a permit. Right. But so the question here, though, is that unless you had a Fourth Amendment, is there a Fourth Amendment injury unless it was a Fourth Amendment injury, right? Like you might have another injury, but you're asserting a violation of the Fourth Amendment. And I think a question like something that the Wyman analogies or the Wyman line of cases or the Hirschfuss might suggest is that there isn't actually a Fourth Amendment interest at all or a robust Fourth Amendment interest that can't be impeded on when it's in the context of a regulatory scheme and it's to obtain a benefit rather than a criminal concern. So how do we, do we have to conclude that you have a Fourth Amendment interest if they just didn't have the warrant option at all? If they didn't have the warrant option at all, I think there are any number of cases equal from the district court in this circuit and the court of appeals such as Pasha and Sokoloff that have held that if you don't have the warrant option, the ordinance is unconstitutional on its face under the Fourth Amendment. That is the holding of Sokoloff. That is the holding of Pasha. Even as to your as-applied argument, there is the declaration from the city that they, I believe, 44 applications for search warrants were obtained and two of them relate to plaintiffs in this case. So in terms of your claim that the city sat on its hands and isn't seeking warrants, they have submitted some evidence by declaration and citation to court cases that they actually did get warrants. What's your response to that? They did submit some warrant applications after the, well after the, well, after the commencement of this litigation. So to the extent that happened, we are the parties, we believe, who brought this about. And quite frankly, if this were to go back down to the lower court, we would argue we're a prevailing party, at least as to that point, because we changed their policy. Did you, did your clients do anything to expedite the consideration of their applications? I mean, other than bringing this lawsuit? Our clients, it doesn't appear on the pleadings. I certainly had, on behalf of the clients, written both to, in general terms, the code enforcement, deputy code enforcement officer, the city council, and the court council, saying there's a delay here, there should be a time limit, we should go ahead. Whether or not there were specific demands on specific properties does not appear on the face of the pleadings. May I ask about the notice of claim issue for your state law claim? Can you explain why you think you qualify for the public interest exception? We believe that it is in the public interest to make sure that the property rights and the policies of the city comply with the Constitution in this case. We also think that this is an issue which, as we've argued, is one which the lower court should have declined to continue to exercise supplemental jurisdiction and is an issue better left for the state courts. Thank you. Thank you. We'll hear from the applicant. Good morning, Your Honors. May it please the Court, Darian Bailin for defendant appellate The City of Syracuse Rental Registry is both facially constitutional, and we understand that appellants are not challenging that, and constitutional as applied to the plaintiffs in this matter. Simply put, there's no Fourth Amendment violation where an ordinance such as the one here, the City of Syracuse Rental Registry ordinance, does not compel warrantless searches. Our ordinance provides for consent or a warrant. But the argument is that it's de facto because you went six years without one. Are you actually putting people in a position where they have to choose? No, Your Honor. So the city has sought warrants. We've cited to several of them. Correct. So what do we do about the six years? I mean, do you have a response to that? So it is outside the scope of the record. However, there were a number of factors, COVID-19 being one of them. There were a number of reasons for the Is there a time period by which a city could delay in seeking and attempting to seek warrants for these in which it would give rise to a Fourth Amendment violation? No, Your Honor. So you could have an empty statute that emptily provided a on-paper only you can go and seek a warrant. But we all know nobody's going to do it, and there's no time period by which there would be a Fourth Amendment violation. The case law says where it's a permissive, the city may seek a warrant, which is the language we have here that the city may seek a warrant. That's not mandatory on the city to do. So no, there wouldn't be a set time period. Doesn't Sokolov pretty clearly suggest that if that's how the provision works, that you do have a Fourth Amendment problem? There may have been some suggestion, but that wasn't the holding. It wasn't directly addressed in Sokolov. And if you look at the Hafez cases where a definite delay isn't unconstitutional, where the language is permissive about obtaining a warrant like we have here. Is there any state law remedy for, I mean, that plaintiffs could have pursued to get their application timely addressed? I'm not sure I understand your question. I mean, if they think that the Syracuse is not seeking a warrant and they want to get their apartment rented, is there some state law provision they could have sued under? I'm just curious to say, get going. We want to rent our property. I'm not directly aware of one. Possibly an Article 78 proceeding, but I'm not quite sure how that would work. So what remedy would, how would it not then be de facto policy to, in essence, demand consent to search? Because if the city could just say, well, these applications, there's a refusal, so we're not going to, you know. Now, maybe it's a resource issue, because if the reason for seeking a warrant is just a failure to consent, maybe more work is involved. I don't know if that's in the record necessarily. But what is the remedy, then, for a landlord if, by checking the box I don't consent, in effect, you don't get your certificate to rent? The certificate for the rental registry is a benefit. So there wouldn't be a, the only remedy would, or I'm sorry, the only injury would be that they didn't get a benefit to which they're not constitutionally entitled to. So I'm not sure that there would be a remedy. So your position is basically that the statute could say, could like excise out the warrant, the warrant option, and you would still be constitutional because this Fourth Amendment injury doesn't attach when you, when you're receiving a benefit. Under, under state law, we have to have the, the warrant requirement. So the statute complies. However, it, it is a benefit. So there isn't anything mandatory that the city gives us. Under federal interpretation of Fourth Amendment law. Correct. I have a question about on page A83 of the Dexamethasone Act, paragraph 12, the city has sought inspection warrants in connection with, to date, this budgeted fiscal year 49 properties pursuant to rental registry applications indicating the property owner's refusal to consent to inspection. And then it goes on to list the docket numbers for the various warrants that were sought, asking us to take judicial notice. My question is, and it may not be in the record, are those entirely sought because of a refusal to consent or were there complaints by tenants? I imagine the city inspects or seeks warrants to inspect if it doesn't have consent where there is also a complaint from a tenant, perhaps. No? Your Honor, that is outside the record. But my understanding is that there are a number of reasons that we seek warrants, not only lack of consent, but if a tenant were to raise a code issue, that could be a reason. Right. There's lead paint or something like that. Correct. But we don't know if these 49 were all entirely because the city was now working on a backlog of applications where the landlord didn't consent. We don't know that for sure, do we? I don't, Your Honor. So can I ask about Hudson Shores? It seems to be, I think, of some import to your case. How do you think it applies? I apologize. I'm not entirely familiar with that case. It involved whether municipalities could impose civil penalties on landlords who refused to fill vacancy, request for vacancy information. So it's a reasonably case, I think a reasonably important case for your side. So here are the civil penalties are for renting without the rental registry. They're not for refusing consent. The upshot, though, is there, we said that pre-compliance review was pretty important. And is there any form of pre-compliance review in the scheme that the city has set up? Pre-compliance in terms of pre-compliance with a search. So there is a review process for the applications as they come in. That is somewhat outside the scope of the record here. But there is a review process for applications. Before you actually conduct the search. Correct. And where there's not consent, there would be, presumably, the city would be seeking a warrant from a judicial officer. Correct. There's no further questions. I'll rest of my brief. Good morning again. So there are a few things I want to briefly address. Number one, to the extent of the municipality's practices since this case was done and that are contained in their papers, this was judgment on the pleadings. I don't believe under that standard that should be a basis to have ruled in favor of the city. If we were talking summary judgment, we might have a very different discussion or might not. Number two, the idea that the city can sit back and never inspect is both contrary to its own ordinance, which says it shall inspect as a precondition to the rental registry. And HFAS doesn't support the city's position. There are two HFAS decisions from the Northern District of New York. And they both involve the facial sufficiency of the ordinance. But HFAS 1 said that if the city declines, if you decline to give consent, you may suffer a delay. It doesn't say forever. What it's talking about is an administrative delay. Can you point me to any U.S. Supreme Court case that's recognized a Fourth Amendment claim in the absence of either a search or seizure or a provision for a criminal penalty for refusing consent? I can point you only to Camara, which had a criminal penalty but certainly was a case where there was no search. It was based on a refusal for a search. But there was a criminal penalty. That is correct. Same with Patel. I'm just asking if there is any other case. Of the U.S. Supreme Court, no. There is not. As to the question of whether there would be a State Court remedy, mandamus is available, but not if there is any discretion on the part of the municipality. So I don't think it would exist here. It has to just be wholly a mandatory duty. I thank you. Thank you. Thank you both, and we will take the matter under advisement. The next case is the United States v. Singh. Good morning, Your Honors. May it please the Court, my name is Gary Shore, and I represent Mr. Singh in this appeal before Your Honors. The issue in this case, the issue before this Court, is whether the prosecution presented sufficient evidence supporting the mens rea element of the attempted obstruction charge, whether Mr. Singh acted corruptly with an improper purpose, and to have the complainant recant not the facts, but the conclusion that she was kidnapped, that she was held against her will. Respectfully, the prosecution's proof on that element was deficient. Okay, so at one point, well, let me start off. Ms. Anwar had her shoes with her at a house before Mr. Singh put her in the car, is that right? I believe Ms. Anwar was wearing her shoes when she left the other vehicle and walked towards Mr. Singh. Right, and so her sandals were left on the ground, but he did try to get her to testify that she asked him to take her to the car because she didn't have her shoes with them, because she left them at a party. Is that right? That's what her testimony was, yes. Okay, so why would that not be enough of a lie to have the form, the basis of an intent to corrupt? The focus should be not on what happened there on the street, because there was no, he admitted that he slapped her and that he picked her up and took her to the car, but the focus of the court and the focus of the mens rea with respect to the obstruction should be on whether or not thereafter she was held against her will, and there's. But how connected is the kidnapping charge and the conviction on the obstruction charge? They don't have to be in lock, in sync, right? They both exist. The government didn't charge him with assaulting her. They could, maybe they could have. They didn't charge him with anything other than the kidnapping. Yeah, but that's not the, my question is there's a difference between maintaining that you are ultimately innocent of kidnapping and between asking someone to lie about a potentially incriminating fact, right? I mean, that's different. Well, I don't necessarily think it's different. It's the elements of the crime that he was asking her to not lie about, but to tell the truth about. Tell the truth about the fact I didn't hold you there. I didn't hold you against your will. I'm wondering, it seems that your argument hinges on the fact that the jury didn't convict your client of the kidnapping, but I thought it was black letter law that sufficiency analysis was separate from the question of, I'm not saying the verdict was inconsistent, but an inconsistent verdict. I mean, it's not the failure to convict on kidnapping does not tell us whether there's sufficient evidence or not. It's not even relevant to the question of whether there's sufficient evidence as to the attempted obstruction. It tells you that we're not arguing. No, I'm not. We're not arguing inconsistent verdicts. We've never claimed that in any way. But the argument is that when someone says, tell the truth, that's not obstruction. But isn't it obstruction to say go today and take back your statement? Take back your statement. And tell the truth. That's really what he was saying to her. Well, then that's why I'm asking about the shoes. If he said don't tell